Okay, the first case this morning is People v. Armour. That's case number 4150380 for the appellant, we have Mr. Peter Wise, and for the accolade, Lyndon McClain. Mr. Wise, you may proceed. Peter Wise May it please the court. After that formality, it's great, you know, it's nice to see the three judges I know best on the panel. Not that this is a bad panel in the appellate court, but as I commented to Ms. Benders, it's like old home week right here. Your Honor, I'd first like to address two evidentiary issues in this case, the first being the belay opinion testimony, or the opinion testimony I'll call it, that the trial court allowed witness Mark Foley to give. And that whole issue started prior to trial when a couple weeks before trial, the defense counsel filed a motion to eliminate saying, hey, no expert testimony here, you didn't disclose an expert. Prosecutor assured the defense attorney, I'm not calling an expert, the motion wasn't ruled on. Trial judge said, hey, if it comes up, we'll discuss it in the morning at trial. Well, Mr. Foley testified, he's a DCFS investigator, he testified that he listened and participated in the interview of Alex at the school that morning, asked him questions, listened to his statement that his father had hit him with a belt and observed the bruises. Of course, at that point, after listening to Alex testify, or listening to Alex make some statements, it's far beyond later on when he's talking about, when the judge talks about belay opinion testimony, he can't be testifying to his personal knowledge after he's listened to Alex give statements, but we'll address that in a second. The prosecutor then started to ask some opinion questions, asked if Mr. Foley, if the bruises that he saw were consistent with Alex's statements that he had been hit by a belt, that drew an objection. Hey, wait a second, he hasn't been qualified. There was an attempt to qualify, and then a second attempt by the prosecutor to get an opinion was met with, wait, wait, wait, we don't have, there's no expert witness disclosed here, there's no, it's under 412, and their court responded, and I think this needs to be looked at very carefully. The court says, it's an opinion, but the court does not believe it's to the extent where it needs an expert opinion to testify to that. It would be a layman's opinion as to whether or not it's consistent, the bruises were consistent with what he, Alex, told, so the court's going to overrule the objection, let him testify because it would be a layman's opinion concerning the bruising. It's pretty clear that the court has this impression that a lay opinion is kind of an expert witness light, and that's just not the case, that's not the rule. The court went on to say, in a second effort to explain what he's going to allow, I don't believe it would require an expert testimony to testify whether or not it is consistent with striking with an object such as a belt. I think a layman can make that determination. In fact, the jury as laymen are going to be asked to make that determination, so it does not require an expert testimony, but it can be made by a layperson. And his third bite of the apple was saying that Foley's opinion was a lay opinion, and the fact that he has some experience, some background, that only goes to the weight of the evidence. Well, it's pretty clear that the trial judge did not have a grasp or an understanding of Illinois Rule of Evidence 701, which indicates that if a witness is not testifying as an expert, an opinion is limited to opinions that are rationally based on the perception of the witness, helpful to the trier of fact, and not based on any specialized knowledge. So you look at that, and we know the classic situations where a layperson is allowed to give an opinion, such as a person's age, the speed of a car, intoxication are three that come to mind. But here, we're beyond the point where Mr. Foley's opinion is based solely on his perception, or what he rationally perceives, or his personal knowledge. He's testifying. I listen to Alex's statements. I listen to Alex say his dad hit him with a belt. I saw these bruises. He can't, at that point, be testifying based on his personal knowledge, because he's saying, I'm basing my opinion on what Alex said. I'm basing my opinion. That's far beyond the idea that he's testifying. So was your initial objection based upon the state having not qualified Mr. Foley as an expert? You mean at trial? Yes. I didn't try the case. Was that the initial objection? And didn't that, if so, does that kind of invite in the additional testimony about how many cases he's observed over the years that he was in service and such? Well, the initial objection, you're correct. The initial objection by defense counsel was, hey, he's not qualified. And there was this attempt to qualify. And then the second objection was, wait a second. We went through this. We had this issue come up in my motion in Lemonade, and there's been no expert testimony disclosed. It seems to me that then the second objection was, even after the additional question from the state, would have been that they still haven't qualified him as an expert. Well, I think that certainly, there was, I don't think that, well, I think that was certainly part of it when this issue was addressed in three different stages. At trial, twice during the testimony, and then in a motion for a mistrial following Foley's testimony. And all of these issues were raised and discussed. He's not qualified. He was never, no expert was ever disclosed. But, you know, the judge's ruling was, hey, we're just going to call this, he's not an expert. Yeah, you're right, no expert was ever disclosed. But I'm going to call it lay opinion testimony, which clearly is not. The initial objection at trial was actually sustained by the trial court, was it not? Correct. And, presumably, the trial court sustained it because the trial court agreed with defense counsel that the state had not qualified Foley as an expert. Is that fair? Okay. So then, apparently, the court, at the second objection, then changed its mind and decided that the state didn't need to qualify Foley as an expert because Foley could testify as a lay person. Well, that is correct. And that... I'm not saying that I agree with the trial court. I'm just making sure that I understand it in my mind. Exactly. And that brings us to one of the third, the third part, or another part of any expert testimony. The court twice said, we don't need an expert opinion on this case. We don't need an opinion on it. He says expert opinion. But he says, you know, a lay person can figure this out. And any opinion, expert opinion or lay opinion, has to be helpful to the trier of fact. Foley's standing there looking at this child with his own eyes, as opposed to looking at a photograph. And in his opinion, the marks on the child look like they came from a belt. Why is that not subject to a lay opinion that's helpful to the jury? It's based on his own perception. That is, but he was allowed to testify that his opinion that he ultimately gave twice was, I listened to this child testify. And his statements, the opinion he gave, his statements that he was hit with a belt are consistent with what I saw, which is in the nature of expert testimony. He was, that's the opinion that he was, he was allowed to testify as an expert. Even though the judge said, this is lay person testimony. The opinion he was allowed to give was in the nature of expert testimony, where he was allowed to compare, I listened to what Alex said. That is consistent with being, with what I, with being hit by a belt. He didn't, I'm sorry, he didn't simply give a lay opinion of this is what I saw. And yeah, based on my perception. So if that's what he testified to, I would have less of a leg to stand on. But he testified to an expert, what amounted to an expert opinion. And this is after the judge said, we don't need opinion testimony in this case at all. So any opinion is not helpful to the trier of fact. So that portion of the foundation for any opinion is not met. I'd like to address for a moment this issue of the prior inconsistent statement as substantive evidence. Prosecutor called Alex's younger brother C.K. as a witness in this case. First, the first part of the direct examination of C.K. was that when he was in the first grade, he'd talked to some officers, he remembered that. But after that, the prosecutor then asked this very odd, probably inappropriate series of questions. Do you remember that you said Alex, did Alex get hit by a belt? I don't know. Well, do you remember saying to officers he got hit by a belt? Do you remember this? Do you remember that? A whole series of do you remember questions. And the direct examination ended when C.K. didn't remember anything. Then there was some cross examination. But during the direct examination, C.K. was never confronted with any statements that he made during his April 17th Child Advocacy Center interview. And we know what he had said, anyway, during that interview. Yet after C.K. testified, the prosecutor sought to have the tape of the CAC interview admitted as a prior inconsistent statement and have it admitted substantively. The foundation for that was simply, so what the judge did was then review the tape and said, yeah, I'm going to let that in, and then there was a discussion about how much of it would be let in. The foundation, the basic foundation, the mechanics of impeachment simply did not happen properly at this trial. We all know that when you want to impeach somebody with a prior inconsistent statement, you must confront them with that statement on the witness stand and establish that inconsistency. And the prosecutor pointed, Ms. McLean says in her brief, well, that's just a meaningless exercise in this case. It's not. It never is. When the witness says the light is green and you have a statement that the light is red, you must confront them on the witness stand with the statement, the light is red, because they may agree with you. We're done then. There's no need to complete any impeachment. If the witness disagrees with you, no, the light was green, then you have an obligation to complete that impeachment. It's a fundamental foundation for impeachment that you must confront a witness with the prior inconsistent statement on the witness stand. That was not done in this case. We don't know why, but it just wasn't done. I want to make sure I understand you. So if he had said, did you tell the police officers your brother got hit with a belt by your dad, and he denies that, that would have been a sufficient confrontation. Is it because he says, do you remember telling the police? Well, that's part of the problem. I mean, I learned that the hard way, and most of what we learn, we learn by getting our butts kicked somewhere. A trial in front of Judge Scott where I asked the witness, do you remember saying X? Do you remember telling Agent Price McCarty X? And the witness says no, and I try to put Price McCarty on, and Joe Hartsland, wait a second. All we heard was he didn't remember. So that's part of the problem. What should have been done is the prosecutor should have asked CK, do you, did you state that your brother was, in an interview or on such and such, or somehow identified at the time, did you state that your brother was hit by a belt? Did you state that your brother ran outside? Yes, that would have been the best way to do it. But even if it was, do you remember saying on a prior occasion, such and such, maybe you can get by with that. Maybe Judge Scott was a little too by the book with me. But the problem is there was no effort, zero effort to confront CK with the child advocacy center interview statements. Not even, you remember saying on April 17, such and such, not even that was done. So we had no effort at all. And that's beyond, that's not just a pointless exercise, that is the foundation for impeachment. The second problem here is that the in-court testimony was limited to, I don't remember Alex being hit by a belt, I don't remember talking to officers, I don't remember telling officers that Alex got hit by a belt. Yet the floodgates were opened when it came time, when the judge ruled, hey, we're going to allow in this tape, the floodgates were opened. I thought he limited it to a certain 15 minute portion of the tape. Well, he limited it to a 15 minute portion of the tape, but in that 15 minutes, the jury got to hear all manner of information that was well beyond what CK testified to at trial. The only thing that's admissible when you're completing an impeachment is an inconsistent statement that is actually inconsistent with the witness's in-court testimony. Again, a fundamental rule of impeachment. Going back to my example, the witness says the light is green, I have a statement that says the light is red, the witness denies that, I present that statement, but I don't get to present the light is red, plus the driver got out and danced, the driver got out and said I'm okay, the driver said I'm really at fault here, I don't get to do that. This statement was admitted as substantive evidence. When CK testified, he testified that his father just used timeout as punishment. Fine. I agree, that is fair game for impeachment. But the fact that, I agree 100%, but what they got in here was CK's statements that Alice got hit in the chest, the feet, the midsection, they got in that Patty was there when she said she wasn't there, they got that bonus, they got in there that some specifics about school discipline, which was not inconsistent with his in-court testimony. All manner of things that were devastating to the defense case that they never should have got in because it was not actually inconsistent with CK's in-court testimony. Yes, it was somewhat limited, but not even close to what it should have been. The third issue here, Judge, your honors, is the issue of this closing argument, which, as I've indicated in the brief, is reviewable under plain error. And this, I see my light. There is no opinion in the 4th District that has what we have here. We have a situation where the prosecutor provides his unsworn testimony, an uncross-examined testimony about what happened and who to believe, offers his personal opinion about who to believe and why, offers his opinion about what the law is on great bodily harm, after telling the judge that, you know, I won't be giving a definition. This is the most offensive closing argument that we've heard. And it was plain error. Thank you. Thank you, Mr. Wise. You will have rebuttal. Ms. McClain. May it please the Court? This state is asserting that no error occurred in this trial. The DCFS investigator, Foley, was properly allowed to give lay opinion testimony that the pattern of the bruising on the victim was consistent with being inflicted with a belt. The trial motion in limine was limited to expert testimony, was not ruled on. And when Foley got up, he testified that he believed that the injury was caused by a belt. That was proper testimony, because he had personally observed the bruises on the victim. Why did the Court initially sustain the objection then? I think that the objection was expert testimony, relevance and knowledge to testify. And the Court sustained that objection, but gave the prosecutor leave to lay a foundation. And then the prosecutor laid a foundation, which was also... Laid a foundation for expert testimony? It turned out it was lay witness, lay opinion. Are you saying that the Court really switched gears then? I believe you're right. I think that the Court possibly suddenly realized that this is lay opinion testimony. In several cases, the Ward case, a 1992 Supreme Court case, the detective was allowed to testify that the substance on the defendant's face was brain matter. James, a Fifth District case in 2014, the detective was allowed to testify that the ease, certain handwriting, was similar. So this is in the realm of the DCFS investigator personally observed the bruises. And based on his experience, he was able to add something to what the jury had before them. During the course of the discussions and or argument, whatever it was regarding the motion in limine, did the State ever indicate to the Court that it didn't need expert testimony? On how the injuries occurred and whether they were consistent with the bill? No, no it did not. Don't you think that was misleading to the defense? As I recall, defense counsel did almost all the talking at the motion in limine hearing, stating, I talked to prosecutor, I don't think I need to pursue this motion now. And the Court said, fine, if you need it before trial, just give me a holler. When the Court sustained the initial objection, the State subsequently asked additional questions. Did Foley indicate that not only had he investigated hundreds, if not thousands, of cases and looked at certain kinds of injuries, did any part of that additional testimony say, yes, and I've seen injuries? From a belt that were inflicted on any of the victims in the cases that he looked into? I don't believe he said specifically belt. He said he observed injuries on different minors, had compared statements to what caused the injury, and had developed a pool of knowledge as to injuries and their causes. He was a DCFS investigator for more than 16 years, had handled close to 2,000 abuse cases. Okay, thanks. I think in this case, he had personally observed the injuries on a boy's body, then he applied his experience in other abuse cases to help the jury interpreting the bruise marks. The questions posed to him were found by the prosecutor were foundational and established Foley's familiarity with bruise patterns and was a basis for the Court to conclude that the injury was caused by the bruise marks. He was more likely to correctly identify the instrument of cause than the jury. The judge also instructed the jury that Foley's testimony was lay witness, lay opinion. Excuse me, what was that last thing you just said? I think the judge instructed the jury that Foley would be testifying as a lay witness, lay opinion. Okay, I was not aware of that. Was that an oral admonishment, or was that a written jury instruction submitted to the jury? It was an oral admonishment. In ruling on defendant's objection, the Court held that and told the jury that Foley could testify as a lay witness as to his opinion of whether the bruises were consistent with what he'd been told, and the jury would then determine what weight to give that weight. If not, no other questions on that issue, I'll move on to the next one. It has to do with C.K.'s statement at trial. Eight-year-old C.K. was the victim's younger brother, and he testified as a lay witness. He testified he remembered talking to some police officers when he was in the first grade, but when he was asked what he talked to the police officers about, he did not remember. He did not remember A.K. getting hit with a belt. He did not remember coming to Quincy and sitting down with an officer and talking to him in a little room. He did not remember having an interview with police officers. He did not remember telling the officers he saw his brother getting hit with a belt. He did not remember telling officers his brother got in trouble at school. He did not remember telling the officers that his father hit him with a belt. He did not remember telling the officers that A.K. tried to run outside. He did not remember telling the officers that Patty told A.K. to come back inside. He did not remember telling the officers that A.K. had scratches on his chest. And he did not remember why he talked to police a year ago. All of that established inconsistency such that the statement that C.K. gave to the officers was admissible under 115-10.1. Mr. Wise argues that he needed to be confronted with the prior inconsistent statements. Are you saying that the testimony that came out was equivalent to a confrontation? I think that he wasn't confronted. Was this your statement? But they did establish memory loss, which establishes an inconsistency between the statements. So he doesn't really have to specifically be confronted with those prior inconsistent statements or lack of memory. I think that he was confronted. Do you remember telling the officers that you saw your brother getting hit with a belt? I believe that's sufficient. The minor had professed memory loss and that established the inconsistency under the statute. He was confronted with the general date when C.K. was in the first grade, the place, a little room in Quincy, the general subject matter, and who was present, officers. The judge then viewed the video prior to ruling on immiscibility and decided that at 15.43, everything after that was not admissible. So the judge did make a discretionary decision on what was admissible and what wasn't admissible. And the prosecutor admitted that at the end of the video, this is the part that wasn't admitted, where C.K. draws his father's gun, that would be prejudicial. So I think that the court properly admitted what was inconsistent and relevant and excluded that which was not. As for defendant's argument that the recording should not have been played in their entirety, I don't think the court, I think that the court was not required to make a quantitative or mathematical analysis of exactly what should come in or what should not come in. And I think all of it was admissible and allowed the jury to view the demeanor of the witness. If you, you know, just stop and start the video and leave out big chunks, that is not a, doesn't allow the jury to view the witness's demeanor. As for closing argument, that issue is forfeited because there was no objections at trial and it was not included in the post-trial motion. Plain air is of limited exception. Prosecutors are given great leeway in what to argue in closing argument. A prosecutor may state his opinion, which is based on the record or on legitimate inferences derived from the record. And while the prosecutor said, I think or I believe, this court has rejected the argument that any time a prosecutor uses those phrases, air results. And every time the prosecutor used one of those phrases in this case, he also talked about the evidence. He talked about the shape of the bruises, he talked about the color of the bruises and then he would say, I think. So he was making legitimate inferences based on the record, on testimony, on photos. And a Bailey case I cited in my brief, the prosecutor used the words, I believe and I think nine times, but taken in context and based on the evidence, those comments were not improper. And I also don't believe that the, if you look at the reasonable doubt arguments, the prosecutor did not diminish the state's burden. And in fact, in rebuttal argument, referred to the high burden that the state had to reach. So we would ask that this court affirm the conviction below. Before you conclude, I'd like to go back to the first issue. The lay testimony, as I understand it, according to the rule, is not to be based upon specialized knowledge. You agree with that, don't you? Yes. Don't you think that the jury, by the follow-up questions from the state, was led to believe that Foley did have specialized knowledge? He did not testify as to training or... Well, you just went through some of the litany, the 2,000 hours, 2,000 cases that he had seen. I think that detectives and officers are allowed to testify based on their experience. If something looks like blood, something looks like brain matter... That's not specialized knowledge? I believe it's experience. I think in this case it was experience, too. Sounds like semantics, but you may be onto something. I don't know. Thank you. Any rebuttal? Your Honor, you raise a good point. We say specialized knowledge, but the component of the foundation of the rule is specialized knowledge, experience, or training. I think it covers all of those issues. So, yes, there was this... I don't know if this was a laying-in-the-weeds situation. We don't know that, but you're correct. This issue was addressed at this motion to eliminate, and as often happens, there's a discussion between counsel and the defense counsel puts on the record, I've been assured there's going to be no expert testimony in this case. And the court can do one of two things. I'm going to grant the motion, or we'll just table it. But we have an attempt to qualify. Wait a second, that wasn't enough. And then another attempt with this pool-of-knowledge issue, which is hardly expert testimony. And then the judge switches gears. I think that's one way to look at it. But it's not lay testimony. This man, Mr. Foley, did not limit himself to lay opinion testimony. His opinion, and I will repeat, was based on what this child said. That's consistent with having been hit by a belt. That's not lay opinion testimony. And I believe that the trial judge did... Well, I don't think there's anything in the record where the judge instructed the jury about lay testimony. The judge did make some statements about that. I don't believe they were in front of the jury. I think it was a sidebar where the judge says... In fact, it was at the motion for a mistrial. Explained that the lay opinion testimony and Foley's opinion, was a lay opinion, and the fact he had some experience goes to the weight of the evidence. And did say that it's going to be up to the jury what weight to give that opinion. But that was not an instruction. That was in the course of arguing this issue outside the presence of the jury. To my knowledge, there is no IPI covering lay opinion testimony, is there? There is not. There's not. And there was not some non-IPI instruction to the jurors. You know, getting to the closing argument... Oh, I want to address the memory loss issue. With respect to the prior inconsistent statement as substantive evidence. Simply because the witness professed memory loss, doesn't abdicate the requirement or do away with the requirement that you have to confront the witness with the prior inconsistent statement. This is known as the turncoat witness statute. A gang member who gives a statement to the police on video, I saw Joe shoot Jim. But then at trial, did you see Joe shoot Jim? I don't remember. I don't remember seeing that. I didn't see that. Did you say to the police on tape, you saw Joe shoot Jim? I don't remember that. The next step in that direct examination by that prosecutor is on such and such a date, you, on tape, you told the police that Joe shot Jim. You have to do that. Just because you profess memory loss, the witness professes memory loss, doesn't mean the prosecutor doesn't have to confront a witness with the prior inconsistent statement. That is the essence of the foundation for impeachment. It wasn't done here. That's the Grayson case that was cited. In this closing argument, the prosecutor points out there may have been nine occasions in one closing argument where a prosecutor says, I believe, or it's my opinion. Here there were 30 in only 16 pages of transcript. And not only was it I believe, but he's like, I believe we've heard plenty of evidence that shows that Charles Armour struck his son with a belt. He's putting himself in the jury box. Not just I believe, but we've heard this, you and the 13 of us, the 13 of us that are, we know what happened here. And then slams the door with, it's a high burden. Yeah, but we'll talk about it if I don't have that moment. This is far beyond anything that's been established as inappropriate in any reported decision. And it's clearly plain error. Thank you.